***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission hereby affirms the Opinion and Award with minor modifications.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement dated 29 May 2001 as:
 STIPULATIONS
1. The parties are properly before the North Carolina Industrial Commission, and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. The carrier on the risk for workers' compensation purposes is Royal and Sunalliance Insurance Company.
4. Plaintiff's average weekly wage and resulting compensation rate are to be calculated pursuant to a Form 22 wage chart that was provided by defendants at the hearing.
5. In addition to the deposition transcripts and the exhibits attached thereto, the parties stipulated into evidence in this matter stipulated exhibits one and two which consist, respectively, of plaintiff's medical records and plaintiff's answers to interrogatories. Plaintiff introduced and the undersigned admitted into evidence plaintiff's exhibit one, an MRI record relating to a patient other than plaintiff. Defendants introduced and the Deputy Commissioner admitted the following exhibits: (1) a criminal plea agreement entered into by plaintiff dated 6 February 2001; (2) a criminal record check pertaining to plaintiff; and (3) Darrell Lea's statement dated 20 February 2001. Subsequent to the hearing, the parties submitted as additional evidence in the matter a prior statement by Darrell Lea. In addition, the undersigned takes judicial notice of the following criminal statutes: N.C. Gen. Stat. §§ 14-223; 20-28; 20-37.8; and 20-138.1.
6. The primary issues to be determined as a result of this hearing are whether plaintiff sustained a compensable injury by accident on 14 July 2000, and if so, to what indemnity and medical benefits is he entitled. Defendants denied plaintiff's claim on credibility and causation grounds. Plaintiff seeks attorney's fees for the alleged unreasonable defense of this claim and because defendants backed out of an agreement to settle the claim.
 ***********
Based upon the greater weight of the competent and credible evidence of record in this matter, the Full Commission make the following additional
 FINDINGS OF FACT
1. On the date of the deputy commissioner hearing, plaintiff was 35 years old. Plaintiff was still employed and was working for defendant-employer on the date of the hearing.
2. Plaintiff has a criminal history that predates the alleged injury giving rise to this claim. However, the crimes of which plaintiff has been either convicted or to which he has pled guilty are not crimes that reflect upon his veracity and truthfulness; therefore, plaintiff's prior criminal history, while obviously having some impact on his overall credibility, ultimately is not material to the final determination of this claim.
3. Plaintiff also had a preexisting right shoulder injury prior to his alleged injury by accident giving rise to this claim. From June through July 1999 plaintiff was treated for a right rotator cuff tear, and this tear was surgically repaired. Plaintiff's right shoulder problems due to his prior injury had fully resolved by July 2000, and plaintiff was able to work in his full capacity.
4. On 8 July 2000 plaintiff resisted arrest. In the course of this unfortunate interaction with a North Carolina State Trooper, plaintiff was tackled to the ground by the trooper. Plaintiff did not complain of nor did he suffer any physical injuries as a result of this tackle and subsequent arrest and detention in handcuffs other than a superficial abrasion on his leg. Plaintiff worked his normal job after this incident, and did not complain about shoulder pain or problems.
5. On 14 July 2000 plaintiff was employed as a textile operator for defendant-employer, and he had been so employed since August 1999. Plaintiff's job duties included running machines that produced yarn, and making sure that the machines stayed operable by fixing problems that arose.
6. On 14 July 2000 plaintiff was working in the normal course of his employment as a textile operator for defendant-employer when one of the machines for which he was responsible had stopped running. Plaintiff, in an effort to attend to the inoperable machine, had to walk between the machines and out into an aisle. As he did so, plaintiff and a moving forklift collided. Plaintiff had not heard the forklift coming, as he was wearing earplugs, as was required for textile operators who worked around the loud machines. Both plaintiff and the forklift were moving at the time of the collision.
7. Plaintiff's right side of his body collided with the forklift and in particular the large box it was carrying. After he collided with the forklift and the box on it, plaintiff spun around, walked back to the machines, and went down on one knee. Plaintiff did not lose consciousness after this incident, which was witnessed by at least one of plaintiff's coworkers. Plaintiff later complained to coworkers that his right side hurt after the incident.
8. Plaintiff was taken to the hospital during that same work shift. At Annie Penn Hospital, plaintiff complained of right shoulder pain, head and neck pain, chest pain, and double vision. Plaintiff's medical records do not establish that plaintiff sustained serious or lasting injuries to his neck or head as a result of the incident on 14 July 2000.
9. Plaintiff ultimately came under the care of physicians at Murphy/Wainer Orthopedic Specialists in Greensboro. Diagnostic testing confirmed plaintiff's preexisting shoulder problems and surgery; however, there were recent changes noted, namely a partial tear of the right rotator cuff, that Dr. Murphy felt were extremely consistent with plaintiff's historical account of the forklift collision. Plaintiff's collision with the forklift on 14 July 2000 materially exacerbated plaintiff's underlying, preexisting, asymptomatic shoulder condition, and necessitated the need for medical treatment after 14 July 2000.
10. Even Dr. DuPuy, defendants' independent medical evaluation physician, concurred that plaintiff's objective complaints were consistent with his account of the forklift collision, and that plaintiff's preexisting condition was exacerbated by the collision.
11. Dr. Murphy performed a right shoulder arthroscopy and debridement of plaintiff's rotator cuff on 11 September 2000. This procedure was successful.
12. Due to his right shoulder injury, plaintiff was out of work from 15 July 2000 through 4 January 2001. Plaintiff returned to work for defendant-employer on 5 January 2001.
13. On 5 March 2001 Dr. Murphy indicated that plaintiff was at maximum medical improvement, and assigned a 15% permanent partial impairment rating to plaintiff's right arm.
14. There is insufficient evidence of record from which the Full Commission can find and hold by its greater weight that plaintiff either intentionally collided with the moving forklift on 14 July 2000, or, more significantly, that he willfully intended to injure himself on 14 July 2000 in the collision with the forklift.
15. There is no evidence of record from which the Full Commission can find and hold by its greater weight that plaintiff was intoxicated on 14 July 2000 and that any such intoxication was the proximate cause of his collision with the forklift on that date.
16. Given the totality of the evidence presented in this matter, plaintiff's version of the events of 14 July 2000 is accepted as credible.
17. Prior to the hearing in the matter, the parties tentatively agreed to a settlement of plaintiff's claim. However, this agreement fell apart and the hearing proceeded as scheduled.
 ***********
The foregoing stipulations and findings of fact result in the following additional
 CONCLUSIONS OF LAW
1. According to the Form 22, plaintiff's average weekly wage on 14 July 2000 was $372.26. This yields a compensation rate of $248.19. N.C. Gen. Stat. § 97-2(5).
2. On 14 July 2000, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment to his right shoulder when he walked into or was struck by a forklift. N.C. Gen. Stat. § 97-2(6). This injury by accident materially aggravated an underlying, preexisting, asymptomatic right shoulder condition, thereby necessitating medical treatment and surgical repair of plaintiff's right shoulder. Plaintiff's injury was limited to his right shoulder.
3. As a result of the compensable injury by accident of 14 July 2000, plaintiff was temporarily totally disabled from 15 July 2000 through 4 January 2001. N.C. Gen. Stat. § 97-29. Plaintiff has failed to establish any period of disability after this date.
4. Plaintiff has retained a 15% permanent partial impairment of his right arm as a result of the compensable injury by accident. N.C. Gen. Stat. § 97-31(13).
5. There is insufficient competent evidence of record that plaintiff willfully and intentionally injured himself when he collided with the forklift on 14 July 2000. In addition, there is no competent evidence of record that plaintiff was intoxicated and that any intoxication on the part of plaintiff was the proximate cause of his injury by accident. Accordingly, plaintiff's claim is not barred by the defense set forth in N.C. Gen. Stat. § 97-12.
6. As a result of his compensable injury by accident, plaintiff incurred reasonably necessary medical treatment related thereto, including the surgical procedure performed on 11 September 2000. Plaintiff is entitled to have defendants provide medical compensation for related treatment that was or is necessary to effect a cure, give relief, or lessen the period of his disability. N.C. Gen. Stat. §§97-2(19) and 97-25.
7. Given all of the circumstances in this case, defendants' defense of this claim was not unreasonable. N.C. Gen. Stat. § 97-88.1.
8. An agreement to settle a claim is not enforceable until such time as an actual, valid compromise settlement agreement is approved by the Industrial Commission. N.C. Gen. Stat. § 97-82.
 ***********
The foregoing findings of fact and conclusions of law result in the following
 AWARD
1. Subject to the attorney's fee approved below, defendants shall pay plaintiff temporary total disability compensation benefits in the weekly amount of $248.19 from 15 July 2000 through 4 January 2001. Said compensation has accrued and shall be paid in a lump sum.
2. Subject to the attorney's fee approved below, defendants shall pay plaintiff permanent partial disability compensation benefits in the weekly amount of $248.19 for 36 weeks to compensate him for the 15% rating assigned to his right arm. Plaintiff may elect to receive these benefits in a lump sum award or weekly.
3. Plaintiff's counsel is entitled to a reasonable attorney's fee of 25% of the total amount awarded to plaintiff herein. Defendants shall forward one-fourth of the total amount of compensation owed plaintiff herein directly to plaintiff's counsel of record.
4. Defendants shall provide plaintiff with all related medical compensation that was or is reasonably necessary to effect a cure, give relief, or lessen the period of plaintiff's disability.
5. No attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1
are warranted or ordered herein.
6. Defendants shall bear the costs of this proceeding.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER